## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### March 5, 1920.

## THE PEOPLE v. TITLE GUARANTEE AND TRUST COMPANY.

PRACTICE OF LAW BY CORPORATION—PENAL LAW, SECTION 280*—CONTRACT OF SALE, DEED AND MORTGAGE OF REALTY DRAWN BY TITLE GUARANTEE COMPANY.

An incorporated title guarantee and trust company cannot be convicted of the crime of practicing law in violation of section 280 of the Penal Law by reason of the fact that it drew a contract of sale, deed and mortgage of real estate as part of the examination and the insuring of property to be covered by one of its title policies.

KELLY, J., dissents, with opinion.

APPEAL by the defendant, Title Guarantee and Trust Company, from two judgments of the Court of Special Sessions of the City of New York, entered on the 5th day of July, 1918, convicting the defendant of the crime of practicing law in violation of section 280 of the Penal Law.

The information in cause No. 1 was for legal services and advice in connection with the drawing and attending to the execution of three instruments, namely, a deed, a bond and mortgage of real estate. The information in cause No. 2 was for like services in connection with the drawing of a contract in writing for the sale and transfer of such real property.

---

* See note, *ante.*

The court pronounced defendant guilty and fined defendant $1,000 in each case.

The separate appeals were combined here and heard as a single cause in this court.

*Charles E. Hughes* (*Isidor J. Kresel* and *Lester H. Washburn* with him on the brief), for the appellant.

*Harry G. Anderson, Assistant District Attorney* (*Harry E. Lewis, District Attorney,* and *Ralph E. Hemstreet, Assistant District Attorney,* with him on the brief), for the respondent.

PUTNAM, J.:

This contract of sale, deed and mortgage were drawn as part of the examination and insuring property to be covered by defendant's title policies.    Such a contract of sale which fixes the terms of the deed can hardly be held to be outside the scope of defendant's chartered powers.    Acts incidental to its business, and especially if necessary to place in insurable condition the title to be guaranteed, are held to be lawful for this defendant.    (People v. Title Guarantee & Trust Co., 227 N. Y. 366.)    Before starting to search, certify and insure title to land, defendant must reduce to writing not only the physical description of the property, with a minute of the chain of transfer or devolution from the sovereign of the soil, but also the terms of any easements, appurtenances, reservations, limitations and conditions affecting the offered interest.    The mortgage back to the vendor follows as essential to the purchase. Insurance of title—no longer a matter of individual service, after having been originally by corporations under special charters—has become so common that it may now be organized under the Insurance Law, article 5, as amended.    It is especially recognized for urban lands.    The large building investments in such lots in turn demand the ampler protection that may be furnished by corporate insurers.    Necessarily the

insurer must supervise the instruments of transfer.     Otherwise the title would not be in an insurable condition.

Hence I am of opinion these instruments of title constituted no violation, and that both the informations should be dismissed.

JENKS, P. J., BLACKMAR and JAYCOX, JJ., concur; KELLY, J., reads for affirmance.

KELLY, J. (dissenting) :

I cannot agree with my associates in the decision about to be announced in this case.     If the facts were the same as in People v. Title Guarantee & Trust Co. (227 N. Y. 366), of course I would feel it my duty to follow the ruling of the Court of Appeals no matter what my personal views might be.     But the facts are not the same, and I do not interpret the opinion of Chief Judge Hiscock as indicating any departure from the principles declared by the court in its previous decisions, which condemned the practice of law by corporations as contrary to the policy of the state.     " It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts.     As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in.     As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate." (Matter of Co-operative Law Co., 198 N. Y. 479.)     The reversal of the conviction in the case of People v. Title Guarantee & Trust Co. (supra) is based upon the opinion of the court that the acts complained of in that case, to wit, the preparation by the corporation, " without giving any advice leading to and consummated therein," of a " bill of sale and chattel mortgage by filling out blanks upon and in accordance with the specific direction of a purported customer," did not

constitute a violation of Penal Law, § 280.    And the learned
Chief Judge says:  " No convincing reason is suggested why
a corporation should be punished for performing an act which
because of simplicity and lack of confidential character it has
not been thought necessary to confide to the exclusive care of
attorneys, but which may be performed by a layman," and " it
seems that the best and controlling test by which to determine
whether the given acts constituted practice of law or rendition
of legal services is by the answer to be given to the underlying
inquiry whether such acts were ones which had been committed
to the exclusive charge of attorneys or were those which might
be performed by a layman.    In this inquiry I do not regard it
as decisive that an act is one which is commonly performed by
an attorney.    That might be a matter of habit or convenience.
The inquiry is rather whether it is one which might lawfully be
performed by a layman.    This is to be decided by the nature
of the act and not by the identity of the individual who most
frequently performs it."

   Accepting the test stated by the Court of Appeals, and apply-
ing it to the case at bar, I am of opinion that the evidence
supports the judgment of the trial court that the defendant
violated the statute.    There was proof here that the defendant
through its employee prepared a contract for the sale and pur-
chase of real property.    If it be said that he prepared it in
pursuance of oral instructions from the vendor and purchaser,
if it be contended that a contract involving the title to real
estate is of no more importance than a bill of sale or chattel
mortgage, the evidence further shows that defendant's employee
voluntarily advised the purchaser that a street was to be opened
through the property, that there would be a certain cost on the
owner of the property and that the vendor should bear the
assessment.    The vendor said he would make it right, the
purchaser agreed to " let it go," relying on the vendor's prom-
ises.    Defendant's employee said he thought it should go in
the contract, but the purchaser testified:   " We agreed that,

being friendly, it was unnecessary to put it in a contract, and it wasn't put in the contract." And defendant, through its employee, prepared the contract without inserting the oral stipulation regarding payment of the assessment. Without reference to whether he was right or wrong, can it be denied that a legal question was presented? A question where the party interested was entitled to the personal intimate advice of a lawyer representing not a title insurance company, but the individual interest of his client and responsible to him—such questions have in the past merited the careful consideration and opinion of our highest courts, and the absence of sound legal advice and supervision has resulted in litigation and loss to one party or the other. And when the defendant title company prepared the contract, it contained provisions that the premises were to be conveyed subject to building restrictions and regulations adopted by the city authorities, and that the purchase-money mortgage to be given by the purchaser should contain a clause subordinating the same to the first mortgage on the premises or to any new mortgage which might be raised to take the place of the first mortgage. No word had been said by either vendor or purchaser regarding building restrictions and regulations of the city authorities. Who was present to advise these people as to the validity of the regulations or as to whether they should thus recognize them? We have had frequent litigations in the courts of this county on this very question. Neither party spoke of subordinating the purchase-money mortgage to any new first mortgage which might be put upon the premises. I do not suggest that these provisions so inserted in the contract by defendant were unjust or improper, but I think they were matters calling for legal advice, not from a layman and not from a corporation. And when we come to the most important provision in the contract, we find that " The seller shall give and the purchaser shall accept a title such as the Title Guarantee and Trust Company will approve and insure." This clause and the binding effect thereof has been before the

courts with such frequency that it would seem that the prospective vendor and purchaser might well have benefited by independent legal advice before signing an agreement in which the approval of the defendant was made the sole standard of the sufficiency of the title.  All this is without reflecting on the ability of the defendant to search titles or to insure title, but it seems to me to emphasize the situation presented by the evidence that the defendant corporation, through its employee, assumed to go beyond its chartered powers and advise laymen on important, intricate legal matters which should be left to lawyers responsible to their individual clients and moved by no other interest.  (People v. Alfani, 227 N. Y. 334.)   The Legislature has legalized the work of the defendant in searching and insuring titles.  This is important work and in itself very profitable.  It involves knowledge of the law, but that legal knowledge is a matter between the corporation and its employees.  Drawing contracts, deeds, bonds and mortgages and the various documents which the defendant offers in its pamphlet to prepare, and does prepare continually as appears in the evidence, is legal work.  It may relate to the insurance of titles, but in another aspect it affects the individual apart from his interest in the title insurance policy.  Surely the vendor has no claim on the defendant by reason of the policy of title insurance issued to the vendee, yet his rights and property are dealt with and disposed of.  It seems to me that this sort of work, of which we have evidence in this case believed by the trial court, is work which is entirely distinct from the searching and insuring of title to real estate.  It is legal service which should be performed by lawyers employed by and in touch with their principals, having only their individual rights and interests at heart.  This defendant corporation is expressly prohibited, despite all exceptions, from rendering " services which cannot lawfully be rendered by a person not admitted to practice law in this state " (Penal Law, § 280), and I think the advice given in this case could not lawfully be

given by a layman.    (People v. Alfani, supra.)    Unless we are to emasculate the salutary provisions of section 280 of the Penal Law, I think we should hold that this corporation was prohibited from doing the work described in the evidence and that such work was outside its chartered powers.    I see no more reason for extending the exceptions in the statute than in the case of unlawful practice of medicine or violations of any of the statutes enacted for the protection of the public against unlicensed transactions.    (People v. Woodbury Derma-tological Institute, 192 N. Y. 454; Hannon v. Siegel-Cooper Co., 167 id. 244; Matter of Co-operative Law Co., supra.)

I am of opinion that the judgment should be affirmed.

Judgments of conviction of the Court of Special Sessions reversed and informations dismissed.