THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.*
LAWYERS TITLE CORPORATION, Respondent.

Argued March 11, 1940; decided April 16, 1940.

*Charles P. Sullivan, District Attorney (Frederick Evan Crane* and *William K. Hyman* of counsel), for appellant. The acts complained of constituted the general practice of law. (*Savings Bank* v. *Ward,* 100 U. S. 195; *Matter of Pace,* 170 App. Div. 818; *People* v. *Peoples Trust Co.,* 180 App. Div. 494; *Matter of Wellington,* 154 Misc. Rep. 271; *People ex rel. Trojan Realty Corp.* v. *Purdy,* 174 App. Div. 702; *People* v. *Alfani,* 227 N. Y. 334; *People* v. *Title Guarantee & Trust Co.,* 180 App. Div. 648; *Matter of Duncan,* 83 S. C. 186.) The services rendered by the defendant were not incidental to or necessary for the insurance of title to real property. (*Jacobus* v. *Jamestown Mantel Co.,* 211 N. Y. 154; *People ex rel. Tiffany & Co.* v. *Campbell,* 144 N. Y. 166; *Brooklyn Heights R. R. Co.* v. *City of Brooklyn,* 152 N. Y. 244; *People ex rel. Frost* v. *Woodbury,* 213 N. Y. 51; *People* v. *Title Guarantee & Trust Co.,* 227 N. Y. 366.)

*Henry Edward Schultz* and *Henry W. Proffitt* for Association of the Bar of the City of New York, *amicus curiæ.* The services performed by the defendant designed to secure F. H. A. insurance constituted the illegal practice of law and were neither necessary nor incidental to the examination and insuring of titles and were beyond the scope of the exemption accorded title companies by statute. (*People* v. *Alfani,* 227 N. Y. 334; *People* v. *Title Guarantee & Trust Co.,* 227 N. Y. 366.)

*Edwin M. Otterbourg, Frederic P. Houston* and *George R. Adams* for New York County Lawyers' Association, *amicus curiæ.* The practice of law by the defendant corporation is not exempted under the language of section 280 of the Penal Law and is expressly prohibited by section 271-a of such statute. (*People* v. *Title Guarantee & Trust Co.,* 227 N. Y. 366.)

D. *William Leider, William Wolfman, Walter H. Liebman and Harold I. Cammer* for respondent. Defendant title company had the right to draw bonds, mortgages and other papers affecting the title to real property, the title to which it was examining or insuring. (Penal Law, §§ 271-a, 280; *People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366; *People* v. *Title Guarantee & Trust Co.*, 191 App. Div. 165; 230 N. Y. 578; *Title Guarantee & Trust Co.* v. *Maloney*, 165 N. Y. Supp. 280; *Matter of Kelsey*, 186 App. Div. 95; *Wollitzer* v. *Title Guarantee & Trust Co.*, 148 Misc. Rep. 529; 241 App. Div. 757; *Matter of Co-operative Law Co.*, 198 N. Y. 479.) The other acts charged against the defendant title company do not constitute the practice of law. (*People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366; *Hebbard* v. *Haughian*, 70 N. Y. 54; *Van Alstyne* v. *Smith*, 82 Hun, 382; *Sommer* v. *Oppenheim*, 19 Misc. Rep. 605; *People* v. *Title Guarantee & Trust Co.*, 180 App. Div. 648.)

RIPPEY, J. The defendant was incorporated in 1933 under authority of former section 170 of the Insurance Law (Cons. Laws, ch. 28). In the words of the statute, the purposes and objects for which it was formed, so far as material here, are stated in its charter to be " to examine titles to real property and chattels real, procure and furnish information in relation thereto, make and guarantee the correctness of searches for all instruments, liens or charges affecting the same, guarantee or insure the owners of real property and chattels real and others interested therein against loss by reason of defective titles and encumbrances thereon."

Section 280 of the Penal Law (1936–1937), so far as pertinent, made it unlawful for any corporation " to hold itself out to the public as being entitled to practice law, or render or furnish legal services or advice * * * or to furnish legal advice, services or counsel " except where the corporation was " lawfully engaged in the examination and insuring of titles to real property," but then only when the services might be lawfully rendered by a person not admitted to practice law in this State. Section 271-a of the Penal

Law, in effect at the time of the institution of this action and at the time the acts complained of were committed, prohibited the title company from receiving compensation for the preparation of instruments affecting real estate where such instruments were not necessary to the examination and insuring of titles.

Defendant was charged with illegally engaging in the practice of law in violation of section 280 of the Penal Law in that it " did, on and between November 1, 1936 and November 10, 1937, hold itself out to the public as being entitled to practice law, and to render and furnish legal services and advice and to furnish attorneys and legal counsel to persons in the County of Queens in the handling of and in connection with legal transactions; and did on, about or between said dates above mentioned in the County of Queens, render and furnish legal services and advice." The information then specifically and at length charges the specific acts out of which the violation arose. After a trial in the Court of Special Sessions of the City of New York, defendant was convicted and a fine of $500 was imposed. The Appellate Division reversed by a divided court and the case reaches us upon the certificate of a judge of that court.

The Skillman Contracting Corporation, a building and development institution, procured a plot of land which it subdivided into lots and upon which it proposed to construct fourteen houses. Incidental to the development it procured the Interboro Capital Corporation, a lending institution, to loan $42,000 for use in its building operations. As part of its plan it proposed to dispose of those homes when completed by taking back mortgages from the purchasers for part of the purchase price to be guaranteed by the Federal Housing Administration and to procure policies of insurance of the titles from the defendant. The carrying out of all steps in the consummation of that plan was entrusted to the defendant and by the latter to an employee who was not an attorney.

As part of the plan to procure the F. H. A. guaranty as to each home, the development corporation was required to secure a conditional commitment from the F. H. A. in advance of construction. The builder was required to submit plans, specifications and details of construction and the like to the F. H. A. to enable it to make its appraisal. Forms were supplied for that purpose. Two papers, requiring detailed accurate information known as "operative builder's application for conditional commitment" and "operative builder's description of real estate," involving both land and improvements, containing a statement of proposed restrictions and complete drawings, specifications and plans for the building and a list of mortgage and other lien indebtedness or other outstanding liens upon the property, together with a "legal description" of the property to be covered by the proposed mortgage, preceded the "operative builder's conditional commitment" to insure the loan. That instrument required provisions for amortization of the mortgage indebtedness over a period not exceeding 19 11/12 years, the approval of the lending institution as a mortgagee under title II of the National Housing Act, the filing of various subsequent papers upon forms furnished by the F. H. A., due execution thereof by the borrower and satisfactory exhibition of his credit standing and other qualifications for a loan and evidence of his reasonable ability to pay, and provided that unless the application should comply in all other respects with the requirements of the National Housing Act and the administrative rules issued thereunder by the Federal Housing Administrator, the Administrator should be relieved from any and all obligations under the commitment. Other items of information were required for the issuance of the conditional commitment which are too numerous to detail here. Periodic inspections as construction of the buildings progressed were made by representatives of the F. H. A. When the purchaser was approved the Housing Administration issued its "commitment for insurance." That

commitment was preceded by the " mortgagee's application for insurance " to be executed in triplicate in accordance with the provisions of title II of the National Housing Act, in which were specified many details in regard to probable carrying charges, amortization and requirements as to payments of the mortgage to be included therein, the mortgagee's valuation and various contractual obligations on the part of the mortgagee and representations and further details in connection with the proposal which could not be properly and safely certified without the advice of one having legal knowledge and skill. To that statement was attached the " mortgagor's statement " requiring detail which might be hazardous for any one to certify without legal supervision and advice together with a warning in which was printed section 512, subdivision (a), of the National Housing Act (48 U. S. Stat. 1265), which provided (1936–1937) that " whoever * * * makes any statement, knowing it to be false, or willfully overvalues any security, shall be punished by a fine of not more than $5,000, or by imprisonment for not more than two years, or both " (U. S. Code, tit. 12, § 1731), and a statement that the papers which had been executed were for the purpose of obtaining a mortgage loan to be insured under the provisions of the Housing Act. Attached were five closely-printed pages of complicated and involved instructions as to procedure and the like.

Prior to the closing of deals with the purchasers, the Interboro Company financed the construction of the group of houses under a blanket mortgage, after a contract for the building loan had been suitably prepared and accepted, covering the entire group upon which it made advances as construction proceeded. After a house was completed and sold and all requirements of the Federal Housing Administration were satisfactorily carried through, the purchaser received a deed and executed a purchase-money bond and mortgage, a release of that property from the blanket mortgage was prepared and executed, the purchaser's " twenty per cent affidavit," as required by the F. H. A. regulations,

was prepared and executed, the F. H. A. guaranty furnished and the transaction was closed. A·similar transaction was carried through by another developer known as the Marca Realty Company, Inc., ultimately involving a number of houses with one Phoebus Kaplan financially backing the deal. The transactions in connection with that deal were similar to those carried through in the Skillman deal. In connection with the latter the defendant issued fourteen separate title insurance policies, and in connection with the former it executed separate title insurance policies for the various individual properties involved.

It is impracticable to detail further those transactions between the beginning and the consummation of which several months elapsed. The record contains 120 printed pages of the documents that were used and the record is incomplete because duplication of the papers used in the separate transactions were avoided in the printing. The evidence establishes that the defendant, through its lay employee, supervised and carried through many, if not all, of those transactions, passed upon the regularity and legality of papers, prepared and caused legal documents to be executed in accordance with the requirements of the parties and with the provisions of the National Housing Act, observed and provided against violations of the provisions of the act imposing a penalty for false representations in connection with the F. H. A. guaranty, handled all moneys involved, and attended the closing of the separate transactions. For such services defendant charged and received $15.50 for each completed house transaction in addition to the fee charged for each title insurance policy. It is idle to assert or to attempt to justify any assertion that the handling of those transactions did not require careful attention, legal skill and a high degree of responsibility, such as is commonly understood to be embraced within the practice of law. That the parties involved, other than the F. H. A., relied upon the defendant for advice, for satisfactory preparation of all papers required and for protection of their rights is amply demonstrated by the evidence.

The defendant is not protected by the provisions of section 280, which exempt a corporation engaged in the examination and insuring of titles to real property. That exemption has no application whatever to services which cannot be lawfully rendered by a person not admitted to practice law in the State of New York. It seems to me that it must be obvious without further elaboration that a layman would not be permitted under the provisions of section 270 to render the services that were rendered by the defendant corporation. Nor may the defendant protect itself behind the claim that the services rendered were necessary to the examination of titles and the issuance of its policies of insurance. The title company admitted on the record, in part, at least, that in order to certify that any one of the permanent mortgages was a first lien free and clear of all prior liens and encumbrances it was unnecessary for it to prepare the various papers or to conduct and carry through any of the transactions with the Federal Housing Administration or with the financing schemes of the developers.

Reliance is placed in part by defendant upon two decisions of this court (*People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366, decided in December, 1919, and *People* v. *Title Guarantee & Trust Co.*, 191 App. Div. 165; affd., 230 N. Y. 578, decided December 31, 1920). Neither has any application to the facts in this case. It is sufficient to say that in the first case cited but a single instance was involved where a bill of sale and a chattel mortgage were prepared, and the decision clearly turned upon that proposition. The second case involved two separate actions decided as one. In that case the information charged the defendant with drawing a contract for the purchase and sale of a piece of real estate and a deed, bond and mortgage in connection with insuring the title to the property to be covered. In the case at bar, legal services of a character usually performed by lawyers as a part of their ordinary office practice were undertaken with continuity and were squarely within the prohibitions of the statute. Neither of the decisions upon which reliance has been placed admit of any justification for

such a practice. The Legislature, since those decisions, and presumably having them in mind together with the increasing instances in which corporations were asserted to be undertaking to render legal services, enacted section 271-a of the Penal Law (L. 1930, ch. 397), which barred beyond and in addition to the prohibitions contained in section 280 the practice of law by title companies where the instruments therein mentioned were not necessary to the examination and insuring of titles. To protect the public from unskillful preparation of legal documents and the unskillful handling of legal transactions, the policy of the State, indicated particularly by the sections of the Penal Law referred to, is to bar corporations from doing those acts and carrying through such transactions as were usually required to be performed by licensed attorneys and counsellors at law.

The argument that the papers were simple and not complex and that the blanks might as well be filled in by one not skilled in legal work as by a lawyer was stressed by defendant here as it usually has been presented where illegal practice is charged in the preparation and the supervision of the execution and delivery of legal papers. It might have been presumed with propriety that such an argument as a test for the determination of the question of illegal practice was laid at rest when Judge POUND said, in *People* v. *Title Guarantee & Trust Co.* (*supra*, p. 379): " I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled and the simplest often trouble the inexperienced."

The judgment of the Appellate Division should be reversed and that of the Court of Special Sessions affirmed.

LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur; LEHMAN, Ch. J., and SEARS, J., dissent and vote to affirm.

Judgment accordingly.