

THE ATTORNEY GENERAL

OF TEXAS

Grover Sellers

XXXXXXXXXXXXXXRD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. J. P. Gibbs
Casualty Insurance Commissioner
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-6064
Re: Questions relating to
title insurance and rebat-
ing on the part of agents
for such insurance companies
appointed under Section 21,
Article 1302(a).

In your letter of February 12, 1945, you submit the following questions you desire answered in an opinion of this department:

"Question No. I: May an agent for an incorporated title insurance company furnish, in part consideration of the premium, or, as an inducement to secure the sale of a title policy, the service of preparing deed of conveyance and also, in some instances, prepare quit claim deeds and other curative instruments for grantor or grantee purchasing a title insurance policy through said agent, when such policy does not provide for furnishing these services, and not be in violation of Section 21, Article 1302(a) or any other law which should be considered by the Board?

"Question No. II: If the agent of the title company is a partnership, one member of which firm or partnership is a licensed attorney and such attorney prepares deed of conveyance or quit claim deeds and other curative instruments for grantor or grantee buying a title insurance policy through the agency in which said attorney has a partnership interest, would the fact that the attorney makes no charge and collects no fee from grantor or grantee constitute a rebating practice on the part of the agent of the title company under Section 21, Article 1302(a) or any other law which this Board should consider?"

Article 1302(a), Vernon's Annotated Civil Statutes, provides in Section 1 for the creation of private corporations for the following purposes:

1. To compile and own, or to acquire and own records or abstracts of title to land and interest in land; and

2. To insure title to lands or interest therein . . ., and indemnify the owners of such lands, or the holders of interests in all liens on such land, against loss or damage on account of encumbrances upon or defects in the title to such lands or interests therein.

In Section 3 of said statute it is specifically provided that such corporations shall operate in Texas under the control and supervision and under such uniform rules and regulations as to forms of policies and underwriting contracts and premiums therefor, as may be from time to time prescribed by the Board of Insurance Commissioners of Texas. No title policy or mortgage certificate or underwriting contract other than under the provisions of the act, rules and regulations of the Board shall be permitted; no title policy shall be issued or valid unless written by a corporation complying with all provisions of and authorized or qualified under the act; every form of mortgage policy, guaranteed certificate or title insurance must be approved by the Board and no form may be used until after same shall have been approved by the Board.

Also in Section 3 it is made the duty of the Board to fix and promulgate the rates of premium to be charged by corporations created or operating thereunder on policies or certificates and underwriting contracts, it being expressly provided that the rates shall be reasonable to the public and non-confiscatory to the company. The Board of Insurance Commissioners is authorized to require any company to submit data in such form as the Board may deem proper and to be used for the purpose of determining proper rates to be fixed. Such data may include all information as to loss experience, expense of operation and other material matter for the Board's consideration.

It is further provided in the above mentioned Section of the law that no rate of premium shall be charged different from that fixed and promulgated by the Board.

Section 4 provides that corporations organized under the laws of any other State shall be permitted to do business in this State on exactly the same basis and subject to the same rules, regulations, and prices and supervision as fixed for Texas corporations.

Section 21 of said statutes provides:

"No commissions, rebates, discounts, or other device shall be paid, allowed or permitted by any company, domestic or foreign, doing the business provided for in this Act, relating to title policies or underwriting contracts; provided this shall not prevent any title company from appointing as its representative in any county any person, firm or corporation owning and operating an abstract plant in such county and making such arrangements for division of premiums as may be approved by the Board of Insurance Commissioners."

Section 24 provides that the terms and provisions of the Act are conditions upon which corporations doing business thereunder are permitted to exist and that failure to comply with any of its terms and provisions or a violation of any of the terms of the Act shall be proper cause for revocation of the permit and forfeiture of charter of any such domestic corporation or the permit of a foreign corporation.

It appears settled that title insurance is a business affected with the public interest, affected by public use, and the Legislature has power to provide reasonable rules and regulations governing its policies, forms and rates. New York Title and Mortgage Company v. Tarver, 51 Fed. 2d 584, and authorities cited therein, 62 Cor. Jur. 1054.

Generally, the right of an insurance agent to compensation . . . for selling, and effecting contracts of insurance or performing services in relation thereto, is dependent upon the terms of the contract existing between the agent and the company. In the absence of special circumstances, including contractual or statutory provisions, an agent of the insurer who solicits or effects insurance clearly is not an agent of the insured. 29 Amer. Jur. Par. 89, p. 112, 133; Vol. 2 Couch Encyc. on Insurance Law, Par. 459, 79 A.L.R. 475.

In order to place a reasonable limit on our endeavor in the broad field of agency and its relationships brought about by your use of the term "agent", you have informed us that you have in mind and refer in your questions to such individuals or firms authorized and appointed as the representative of title insurance companies referred to in Sec. 21, Art. 1302a, V.A.C.S. It is therefore apparent from your questions and we assume that such representatives or agents are authorized to and do effectuate contracts of insurance for their principal to insure the title to lands and liens thereon, performing

all other incidental acts in respect to such business, and consequently representing the principal beyond the point of mere acting in a supervisory capacity.

There is this noted distinction involved in the two questions which you present. In Question No. 1 the term "agent" may or may not include a licensed attorney, member of the State Bar who effects the contract of insurance. In Question No. 2 the licensed attorney, member of the State Bar has an interest in the agency partnership, which agency effects the contract of insurance. The identical service, free of separate charge, is involved in both questions.

We therefore assume and interpret the factual relationship in the two questions as the same on this point, that is, that both the agent and agency receive a division of the premium or a commission from the title insurance company for effectuating the contract and that such service inquired of and rendered, involves no separate charge therefor.

Your letter and the questions propounded apparently assume continuity in the rendering of such service, its performance, either (a) or (b). However, same having been held not to be a necessary incident to the business of insuring titles, it would necessarily follow that the rendering of such service is not a necessary incident in making "title search" or "title examination" within the Board's rule including the charge therefor within the premium schedule.

Giving full import to that part of your questions stating such service performed "in part consideration of the premium" we not only assume that no separate charge is made for such service as stated in the second question above set forth but that there are facts necessarily in existence to bring the furnishing of such service as an inducement to the applicant for insurance to effectuating the contract of insurance. In other words, in order for such service to be rendered "in part consideration of the premium", the rendering of such service was a necessary inducement to accomplish, complete, produce or bring about the issuance of the title policy for which a percentage of the premium is allowed the agent.

Our attention is directed to the case of Hexter Title and Abstract Company et al. v. Brievance Committee, State Bar of Texas et al., 179 S.W.2d 946, Opinion by the Supreme Court. In reviewing this case, we particularly note that same was decided upon an agreed statement of facts. According to Paragraph 3 in the opinion, the defendant, a title and abstract corporation, admitted that occasionally in the past and will occasionally in the future prepare or draw deeds, notes, mortgages, releases and other instruments necessary in

connection with perfecting titles upon which it is issuing or plans to issue title policies relating to the property rights of others. It further admitted that such instruments have been and thereafter will be prepared in connection with transactions in the course of which the company issues or obligates itself to issue policies of title insurance. It further admitted that it advises interested parties as to the purpose and legal effects of the instruments drawn by it.

The Supreme Court held under these facts, and we quote:

"It (defendant) therefore advise others as to the secular law, and draws deeds and other papers relating to secular rights within the inhibition of the above statutes. These acts when performed for a consideration, constitute the practice of law, both within the terms of the statute above referred to and the decisions of the courts on the subject. (Citing authorities)".

On the question of consideration, the defendant's admission in the statement of facts was to the effect that "it openly solicits verbally and by advertisement the business of issuance of title policies and represents that it will prepare the instruments referred to in Paragraph 3 thereof, making no separate charge for such service. Upon such facts, the court held that there was within the provision of the statute, 'a consideration, reward or pecuniary benefit' within the above referred to provisions of Article 430a, Penal Code of Texas flowing to the defendant for the legal services so rendered. (Citing cases)"

As disclosed by the record in the Hexter case, said defendant acted as agent for a title insurance company, and as such agent makes contracts for its principal to insure the title to land and liens thereon.

Apparently following the decision in Peoples v. Lawyers Title Corporation, 282 No. N.Y. 513, 27 N.E.2d 30, the court held that the preparation of such title papers was not a necessary incident of the business of insuring titles.

It should further be noted as was pointed out in the Hexter case, that the decision did not involve a mere isolated transaction in which a legal document had been prepared as a pure gratuity but the case involved a corporation as agent holding itself out as being qualified to perform the legal services and that it did so with continuity for the purpose of increasing the legitimate business of its principal.

It has been held that it is not within the province of the Board of Insurance Commissioners to regulate the practice of law and the schedule of fees tendered in connection with this request cannot operate to legally empower a title insurance company to perform acts which constitute the practice of law. Stewart Abstract Company v. Judicial Commission of Jefferson County et al., 131 S.W.2d 686.

Neither the language in Section 21 above quoted or any rule promulgated by the Board can be interpreted, in the light of the authorities cited in the Hexter case, as permitting the owner or operator of an abstract plant to violate the legal practice act. Any division of premiums therein permitted and approved by the Board are not to be considered as allowed for illegal services or services not necessarily a part of the business of the principal. It is apparent that the Legislature recognized that in insuring titles, the services generally performed by an abstracter, such as search of the records and preparation of an abstract for the title examination was an incident of the business of the title company engaged in insuring titles.

In Words and Phrases, Vol. 7, Permanent Edition, P. 817, it is stated that "commissions" is a word without technical meaning, but, when used to express compensation for services rendered, it usually denotes a percentage on the amount of moneys paid out or received. Purifoy v. Godfrey, 16 So. 701.

Other than in the proviso clause of Section 21, the entire act, Article 1302a, deals with the company entirely as distinguished from its agents. The word "device" as associated with the words "rebate and discount" in this section of the statute is indicative of its meaning and clearly has reference to unlawful rebate and discount of the premium or any portion thereof promulgated by the Board. Section 3 of the Act provides that under no circumstances shall any rate or premium be charged for policies or underwriting contracts different from those fixed and promulgated by the Board. There is no penal provision, however, directed to the agent in any of the provisions of this act.

We entertain some doubt that the Legislature intended the language "rebate" etc. immediately following the word "commissions", to anywise relate to such lawful commissions as might be paid to its appointed representatives or agents. Regardless of a proper interpretation of Section 21, under a strict construction applicable thereto and in light of the foregoing, we deem it unnecessary to determine whether or not there is a violation thereof in view of other statutes directly involved.

In the Hexter case, the defendant's counsel recognized that if the transactions there involved no wise related to defendant's business, the defendant through its agent would be practicing law. As heretofore pointed out, the court plainly held that such service was not a necessary incident of the business of insuring titles. In referring to the business of title insurance as well as similar service involved herein on the part of such companies, the Chief Justice in his opinion stated:

"The title company must accept the title and insure it as it is, or reject it. It may examine the title, point out the defects and specify the requirements necessary to meet its demands, but it is the business of the applicant for the insurance to cure the defects." (Underscoring ours)

Agency is the relationship which results from the manifestations of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act. A general agent is an agent authorized to conduct a series of transactions involving a continuity of service. Restatement of Law of Agency, Par. 1, 3. See Couch on Insurance Law, Par. 506.

We are mindful of the rule that the agent as such, is not in a fiduciary relationship with the principal as to matters in which he is not employed. Restatement of Law of Agency, Par. 390. However, the services referred to in your questions are ones performable only by licensed attorneys, members of the State Bar. Should such attorneys hold themselves out as rendering this service free, they are in one and the same transaction tending to the business of an applicant for the insurance, in no wise a necessary incident to the agency. It cannot be reasonably contended that members of the legal profession in such business transactions are serving their clients present or prospective. The failure to charge for such service would not relieve an attorney from the duty owed in such transactions of special trust and confidence. As to the applicant for insurance, such attorney agent is placed in the position of a bailee in procuring insurance upon the property in his possession, which act inures to the benefit of the owner. Polly v. Daniels, 264 N.Y. Sup. 194; Couch Ins. Law, Vol. 2, Par. 451; Broussard et al. v. South Texas Rice Co., 131 S.W. 412.

Section 16, Art. 5062b, V.A.C.S., provides for the suspension or cancellation of the license of either class of agents, local recording agents or solicitors guilty of rebating any insurance premium. Rebating on the part of any agent of an insurer is

condemned by the laws of this State as being against public policy.  See Art. 5053, V.A.C.S., and Art. 578, Penal Code of Texas.

Article 578 of the Penal Code in part provides:

"No insurance company doing business in this state . . . nor shall any . . . officer, agent, solicitor or representative thereof pay, allow or give, or offer to pay allow, or give, directly or indirectly as an inducement to insurance, any rebate of premium payable on the policy, . . . or any paid employment or contract for service of any kind, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance; . . . Any officer or agent of such company violating any provision of this article shall be fined not less than one hundred nor more than five hundred dollars."

Answering your questions under the authorities hereinabove discussed, it is the opinion of this department that any agent for a title insurance company who receives a commission or percentage of the premium, whether an individual, firm or partnership, licensed attorney and member of the State Bar or otherwise, and who, as an inducement to secure the sale of a title insurance policy makes it a practice of furnishing free of charge the service of preparing deeds of conveyance, quitclaim deeds and other curative instruments for purchasers of such title policies effected through such agent or agency, is engaged in rebating in violation of Art. 5062b, Sec. 16, V.A.C.S., and Art. 578, Penal Code of Texas.

We are not to be understood as ruling on any single transaction involved in either of your questions under circumstances not disclosing a continuity of or the agent holding himself out as rendering such free services as an inducement to effectuate the contract.  Such a fact question would involve all facts relating to the particular transaction and not before this department.

Nothing herein is to be construed as passing upon any present or proposed rule or regulation of the Board of Insurance Commissioners or the necessity therefor.

APPROVED APR 30, 1945        Yours very truly
/s/ Carlos C. Ashley         ATTORNEY GENERAL OF TEXAS
FIRST ASSISTANT ATTORNEY GENERAL  By /s/ Wm. R. King
APPROVED: OPINION COMMITTEE    Wm. R. King, Assistant
BY      LPL, CHAIRMAN
WJRK:mp:wb