**WOODS v. KIERSKY.**  (No. 1193—4935.)

Commission of Appeals of Texas, Section A.
March 13, 1929.

Sadler & Cox, of Dallas, for plaintiff in error.

Coke & Coke, of Dallas, for defendant in error.

CRITZ, J. This is a suit for injunction originally filed in the district court of Dallas county, Tex., by John W. Woods, plaintiff in error, hereafter called plaintiff, against Mrs. M. E. Kiersky, defendant in error, hereafter called defendant, to restrain said defendant from erecting a building alleged to be a garage on a lot owned by her, and situated at the corner of Gaston avenue and Moreland street. Plaintiff in error prayed for a temporary writ of injunction, and on presentation of said petition said temporary writ was issued. The defendant filed answer to the merits, and motion to dissolve the temporary injunction. The district court, upon a hearing, sustained a general demurrer to the petition, and plaintiff refusing to amend, dismissed the case.

The plaintiff's petition is very voluminous and comprises 14 pages of the transcript.

Many allegations are contained in said petition charging disorderly conduct on the defendant's premises. We do not consider any of these allegations germane, for the reason that the only relief sought in this cause is an injunction to prevent the erection of a building on defendant's lot, designed to be used as a garage on the lower floor and servants' quarters on the upper floor.

The part of plaintiff's petition which we consider germane to the decision of this case charges, in substance: That he is the head of a family, and owns and occupies with his family, as a residence, a two-story brick building located at 4513 Gaston avenue in Dallas, Tex., being a lot 75 feet fronting on Gaston avenue, and extending back northwesterly 257 feet, and is a part of block 769, between Carroll avenue and Moreland street; that the defendant uses and occupies a two-story frame building used as a boarding and rooming house, located at 4519 Gaston avenue in said city, and situated on a lot facing 75 feet on said Gaston avenue and running back 257 feet, defendant's lot lying immediately adjoining plaintiff's said lot on the east, the east line of plaintiff's said lot being the west line of defendant's lot, and defendant's lot bordering on Moreland street; that about January 15, 1927, the defendant evidenced a purpose to make a change with reference to certain buildings on her lot, and in pursuance of such determination, obtained a building permit from the city authorities permitting her to wreck and rebuild a garage and servants' house on her lot and proceeding thereunder, defendant was preparing to construct a building on her said lot in close proximity to the west line thereof, and near the middle of said lot, from its front to its back being about 40 feet, and extending eastwardly about 24 feet, so that same would have a ground area of about 24x40 feet, two stories high, and so arranged as to have four apartments for cars downstairs, and four or more rooms upstairs, to face on Moreland street; that said building when completed would be used by the defendant as a garage downstairs, and a servants' quarters upstairs. Plaintiff alleges that if said garage is permitted to be built its use will greatly disturb plaintiff's family, and the tenants of plaintiff, and will greatly damage the value of the plaintiff's property. Plaintiff also alleges that said garage will face on Moreland street and not on Gaston avenue, as required by the ordinance in question, and that an ordinance of said city prohibits the building of said garage at the point on said lot where defendant is preparing to build same.

■ Plaintiff's petition contains numerous allegations to the effect that negroes will use the upper story of said proposed building, and that its upper story will be on a level with the upper story of plaintiff's house, etc. We do not consider any of these numerous allegations actionable to prevent the building of this proposed structure.

The part of the ordinance made the basis of this suit reads as follows:

"Sec. 166. That wherever 50% or over of the lots on any street or avenue in the residence section of the City of Dallas have been improved, and the building line of said residences on said street or avenue made permanent, all buildings hereafter erected on adjoining lots shall keep the front building line of such building at the average distance back from the front line as those already built, so that the same shall conform to the permanent building line observed by 50% or over of the improved lots on said street or avenue. Provided, further, that any building thereafter erected in any block or any street or avenue in the residence section of the City must have its front building line at the average distance back from the street as the front line of the buildings already built in any such block.

"That wherever any lots are laid off by any plat showing a frontage for said lots on any street or avenue in the residence section of the City all buildings erected on same, shall keep their frontage on said street or avenue so as to conform to the frontage of the lots shown on any such plat.

"Before any building is constructed a permit shall be obtained from the Building Inspector, and it shall be the duty of the said officer before issuing said permit to require that the provisions of this ordinance shall be fully observed."

"Section 192. All private garages shall be built at the rear of the lot upon which they are erected and at the angle of the lot. No such garage shall be nearer than twelve feet to the street line."

"Art. 6. Sec. 78. Unless a penalty is otherwise provided herein for a violation of certain provisions of this ordinance, then any person, firm, company or corporation, their agents, servants or employees violating any of the provisions of this ordinance where a penalty is not otherwise provided, shall, upon conviction in the corporation court, be fined in any sum not exceeding $200.00, for each and every day that any person (as that term is defined herein) shall fail or omit, neglect or refuse to do any act required by the terms of this ordinance, or shall do any act in violation of the terms of this ordinance shall be subject to the penalty herein provided for not exceeding $200.00."

■ We agree with the holding of the Court of Civil Appeals that the provisions of the above-quoted ordinance, which requires all buildings to face on the street on which the lot faces, only has reference to the main structures and not to subsidiary structures. City of Dallas v. Davis, 266 S. W. 544. Therefore all that part of the petition which seeks an injunction on account of the al-

leged fact that the building faces on Moreland street, and not on Gaston avenue, will be treated by us as surplusage, and having no bearing on the case.

The petition also contains numerous allegations with reference to a generally deplorable condition alleged to have previously existed with reference to disturbances of the peace, etc., on defendant's premises. We are unable to see how these allegations can, even remotely, have any connection with, or bearing on, the only question involved in this case —the right to build the garage at the point in question—and all those parts of the petition will also be treated as surplusage.

Also the petition contains allegations that those occupying the upper rooms of the building in question here will be on a level with the upper rooms of plaintiff's residence, and conditions and inconveniences, etc., that will result to plaintiff as a result thereof, etc. We think that this part of plaintiff's petition is also surplusage. Stated as a principle of law, defendant has the right to have a two-story building on her lot at the point alleged, and no court would have any right to enjoin such.

This brings us to the one question remaining, and that is whether the building alleged is in violation of section 192 of the ordinance above quoted, and, if so, whether plaintiff's petition contains sufficient allegations, as against a general demurrer, to authorize a court of equity to grant injunctive relief.

It is well settled as the law of this state that a private individual cannot maintain a suit to enjoin the violation of a penal law, unless such violation results in damage to such person, peculiar to him, and not common to the public in general. If the petition is sufficient, as against a general demurrer, to allege a violation of section 192 of the ordinance, and damages resulting therefrom, peculiar to plaintiff, and not common to the public, the trial court erred in sustaining the general demurrer, and the Court of Civil Appeals erred in affirming that decision. We think a careful examination of the petition will disclose that it is sufficient, as against a general demurrer, to allege that the defendant is preparing to erect a private garage on her lot at a point not at the rear thereof, and at a point prohibited by said section 192, and damages resulting to the plaintiff that are peculiar to him, and not common to the general public, as a result thereof.

A garage, as a general thing, is "a station in which motorcars can be sheltered, stored, repaired, cleaned, and made ready for use; also a place of private storage for motorcars; a stable for a motorcar." Century Dict. and Enc.

We have not been able to find a legal definition of the term *"private garage,"* or of the opposite term *"public garage,"* but we are convinced that the term *"private garage,"* as used in the ordinance, means a private, as contradistinguished from a *public, garage.* Further, we think that general definitions of things of like character, such as warehouses, etc., will apply. 40 Cyc. p. 401, defines a public warehouse as: "The term 'public warehouse' is something applied to warehouses generally to distinguish them from places in which goods are kept by the owners, or for certain other persons, but not for the public generally," etc.

Applying the same general principle a private garage, within the meaning of this ordinance, is a structure or building kept for the storage of motorcars by the owners, or certain other persons, but not for the general public. Garages provided by the owners of private residences, apartment houses, boarding houses, etc., for themselves and their guests or tenants, are private garages.

We are further of the opinion that a private garage, within the meaning of this ordinance, is a building or structure, the essential character and dominant features of which are those of a garage. The mere fact that a part of the building is to be used for servants' quarters, or sleeping apartments, would not prevent the building from being a private garage within the meaning of the ordinance, if its essential character and dominant features are those of a garage.

As a consequence of what we have said, it follows also that the mere fact that a building, whose essential character and dominant features are for purposes other than those of a garage, that may contain places or apartments for the storage of motorcars, such, for instance, as private residences containing such features, would not be garages within the meaning of said section 192.

We are further of the opinion that where the facts are undisputed as to the kind and character of the building, and its dominant features, the question as to whether the building is a private garage becomes a matter of law, and that as a matter of law the building described in the plaintiff's petition is a *"private garage"* within the meaning of the ordinance.

The Court of Civil Appeals holds that it is the duty of the city of Dallas to construe and enforce its own building ordinances. We agree with this holding as a general principle of law, but we do not believe that when the violation of a building ordinance, penal in its nature, results in damages to the owner of abutting property, which is peculiar to him, as above stated, the mere fact that the city has issued a permit for the violation of the ordinance can avail as a defense.

Believing that the petition, as against a general demurrer, is sufficient to allege a violation of section 192 of the ordinance above quoted, and resultant damages to plaintiff peculiar to him, we recommend that the judgments of the Court of Civil Appeals

and of the district court be reversed, and the cause remanded to the district court for a new trial, and that the original temporary injunction granted by the district court be adjudged to be in force from its original issuance, pending final disposition of this case.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to district court, and original injunction continued in force pending final judgment, as recommended by the Commission of Appeals.