Hugo A. TOUCHY et al., Petitioners,

v.

HOUSTON LEGAL FOUNDATION,
Respondent.

No. B–448.

Supreme Court of Texas.

June 26, 1968.

Rehearing Denied Oct. 23, 1968.

Frederick W. Robinson, Herbert Finkelstein, Houston, for petitioners.

Leroy Jeffers, Curtiss Brown, Houston, for respondent.

SMITH, Justice.

The question presented in this case is whether a lawyer has standing to maintain a suit to enjoin a corporation from violating the Texas Canons of Ethics, engaging in the unauthorized practice of law, and engaging in practices which are demeaning to the legal profession and economically harmful to individual practitioners. In effect, the courts below have held that a lawyer does not have standing to bring such a suit. Tex.Civ.App., 417 S.W.2d 625. We reverse the judgments below and order that the cause be reinstated on the docket of the 165th Judicial District Court of Harris County, Texas, for a trial on the merits.

Petitioners[1], four practicing attorneys and an organization composed entirely of attorneys, brought this suit against the Houston Legal Foundation, a charitable corporation, hereinafter referred to as the Foundation. In this action petitioners sought to enjoin the Foundation from continuing certain practices which allegedly violated the Texas Canons of Ethics. They further sought to enjoin the Foundation from engaging in the unauthorized practice of law, and from engaging in practices, such as maintenance of a lawyer referral service, interviewing in the Harris County jail, and advertising, which were demeaning to the legal profession and economically harmful to individual practitioners. The Foundation filed a plea in abatement to the suit, alleging basically that petitioners did not have standing to bring the suit. The Foundation also filed a motion for summary judgment praying that petitioners take nothing because petitioners had no standing to raise questions regarding ethics and because, as a matter of law, the Foundation was not engaged in the unauthorized practice of law or in conduct demeaning to the profession. The trial court considered the plea in abatement and the motion for summary judgment at one hearing. No evidence was introduced in support of or in opposition to the plea in abatement. The trial court then entered judgment that the entire suit be dismissed. The judgment of the trial court is unique in that it recites that the court sustained a motion for summary judgment after having first sustained a plea in abatement.[2] However, upon sustaining the plea in abatement to the entire suit, and entering the judgment of dismissal, the court's action in granting the summary judgment was meaningless. Therefore, the only issue properly before this Court is whether the trial court cor-

[1]. Hugo A. Touchy, Felix Salazar, Jr., Jimmie F. Y. Lee, Otis Scruggs, and the Texas Society of Practicing Lawyers, Inc.

[2]. The judgment of the trial court reads as follows: "[A]nd it also appearing to the Court that by reason of the above undisputed findings that the Plaintiffs have not shown any justiciable interest or standing to maintain this action and that no genuine issue as to any material fact is raised by the pleadings and affidavits on file and that Defendant is entitled to a judgment as a matter of law and that both Defendant's motion for summary judgment and its Plea in Abatement should therefore be sustained. It is accordingly ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment and its Plea in Abatement should be, and they are hereby, in all things sustained and the above entitled and numbered cause is hereby dismissed. * * * "

rectly sustained the Foundation's plea in abatement.

Before resolving this issue, we deem it necessary to outline in some detail the nature of the Foundation's operations as delineated in the Statement of Principles governing the organization. The Foundation, a charitable, non-profit corporation, functions through three separate divisions— the Civil Division, the Criminal Division, and the Lawyer Referral Service. The Civil Division is comprised of ten (10) neighborhood law offices which are run by approximately twenty-three (23) attorneys. This division handles legal matters of a civil nature for indigents. When a person goes into a neighborhood office handling civil matters, he is interviewed to see if he meets indigency standards which are set by the Foundation.[3] If it is determined that he is an indigent, he is assigned an attorney who handles all further proceedings with that client. No fees are charged or collected for the services rendered to indigent persons.

The Criminal Division of the Foundation[4] sends members of the Foundation's Personal Bond staff daily to the Harris County jail to interview persons accused of crime. If the accused states that he has no counsel and neither he nor anyone acting in his behalf can employ counsel and that he wants a court-appointed attorney, he is given an application form to complete. An affidavit of financial status and an affidavit requesting appointment of counsel are made by the accused. The financial information given by the prisoner is considered and verified and if the accused qualifies as an indigent, a recommendation is made to the court that an attorney or attorneys be appointed. This is merely a recommendation and may be accepted or rejected by the court. Names of private attorneys are given to the court in rotation; in no instance is a Foundation attorney recommended for appointment. The chief of the Criminal Division does designate a Foundation attorney to assist the court-appointed attorney should assistance be desired. In addition, the Personal Bond staff, if requested to do so by a prisoner, takes applications for the prisoner's release on personal bond. If investigation reveals that the accused has close ties to the community and is a stable person who will, in all likelihood, appear for his trial without security, the Foundation recommends in writing to the court that the accused be released on

3.  The Statement of Principles of the Houston Legal Foundation is in the record. It provides for the following method for determining indigency:

    "A. Standard of eligibility—determination of eligibility for free legal services shall be based on the financial ability of the applicant to pay attorney's fees. The factors to be considered are earnings, size of .family, financial and family obligations, and the anticipated cost of legal services if provided on a fee paying basis. While no arbitrary or rigid standard will be adopted by the Board of Trustees based solely on the income, the Board of Trustees, in consultation with the District Board and the Advisory Board for criminal matters may, from time to time, adopt guidelines and reasonable formulas to insure uniform and fair application of the standard throughout the program. In the absence of guidelines established by the Board of Trustees, the discretion of the individual lawyer will be exercised on a case by case basis, subject to review by the Chief of his division and the Director of the Houston Legal Foundation."

    A further limitation the Statement of Principles provides on determining indigency is "that the [indigent's] case is not of the type which private attorneys would or do consider economically feasible to undertake because of the possible recovery of a fee, either out of the proceeds of the case or out of a statutory or common law attorneys fee which may be awarded in connection with the case."

4.  The operation of the Criminal Division of the Houston Legal Foundation has been fully described in three articles— "The Houston Legal Foundation: Excellence for Indigents," 53 A.B.A.J. 335 (April, 1967); "The Houston Legal Foundation: Advocate for the Indigent," 9 So.Tex.L.J. 1 (1967); and "A Case for Automated Assignment," 25 *Legal Aid Briefcase* 9 (October, 1966).

his personal bond. This recommendation may also be accepted or rejected by the court.

The Lawyer Referral Service, which refers both civil and criminal cases, refers people to a lawyer when the people do not qualify to receive free legal services, either because they earn too much or because their case is a fee generating one. These people are made aware of the Lawyer Referral Service by the advertising media or by the recommendation of lawyers on the staff of the Foundation.[5] Any qualified lawyer practicing in Harris County who wishes to join and who pays a subscription fee may be admitted to the Lawyer Referral Service panel. Before directing an interested person to an attorney from the Lawyer Referral Service panel, a member of the Lawyer Referral Service staff interviews the interested person to determine if the person has a legal problem. If it is determined that the interested person is in need of legal advice, the person is referred to an attorney. Attorneys on the panel are required to charge a basic fee set by the Service for this initial interview; thereafter, the fee for legal services is negotiated by the attorney and client. Upon agreement between the attorney and the interested person, the relationship of attorney and client is established.

Petitioners, by their pleadings, allege that the activities of the Foundation are subject to challenge on the grounds of unethical practice, unauthorized practice, and demeaning practices. Relative to the ground that the Foundation itself violates specific canons of the Texas Canons of Ethics, the petitioners allege that the Foundation advertises its services and solicits business in contravention of Canon 24, represents conflicting interests in contravention of Canon 6, and breaches the confidence of parties it represents in contravention of Canon 34.

As to the contention that the Foundation is engaged in the unauthorized practice of law, the thrust of petitioners' pleadings is that the Foundation as a corporation is administering legal aid, and in doing so is violating the provisions of Article 320a–1, Vernon's Annotated Texas Civil Statutes, which prohibits non-lawyers [corporations] from practicing law. Petitioners further contend that the Foundation directly represents its clients as an attorney by signing pleadings, motions, orders and other such documents filed in the various courts of Harris County, Texas.

Finally, as to the allegation that the Foundation's practices are demeaning in character, the petitioners contend that interviewing accused prisoners in the jails, operation of a lawyer referral service, and advertising, are a threat to the heritage and economics of the legal profession. Petitioners contend that the ultimate objective of the advertising by the Lawyers Referral Service is to attract interested persons to the Lawyer Referral Service rather than to apprise the public that it should seek a lawyer when in need of legal advice. By operating in this manner, the Foundation is allegedly placed in the position of being able to "dole out" cases to the lawyers of Harris County. Petitioners also complain that by interviewing prisoners in the jails, under the guise of securing for indigents free legal representation, the Foundation discourages numerous prisoners, who could have paid a fee, from employing private practitioners. According to petitioners, private attorneys cannot compete with the Foundation in these respects because they must observe the Canons of Ethics.

The effect of the action of the trial court in sustaining the plea in abatement was to hold that the petitioners did not have standing to maintain the suit. In so holding, the trial court did not reach the merits. The question of standing is en-

---

**5.** According to the Foundation's Statement of Principles, a lawyer on the staff of the Foundation recommends that a person go to the Lawyer Referral Service only if the person asks the Foundation attorney to recommend a lawyer.

tirely different from the question of whether or not the petitioners are entitled to judgment after a trial upon the merits. We hold that, due to the special interest attorneys have in their profession, they have standing to maintain a suit to enjoin action which allegedly damages their profession. Stewart Abstract Co. v. Judicial Commission, 131 S.W.2d 686 (Tex.Civ.App. —1939, no writ). See Woods v. Kiersky, 14 S.W.2d 825, 828 (Tex.Com.App.—1929, jdgmt. adopted). However, plaintiffs cannot succeed in seeking to apply rules to a person when the rules expressly do not apply to the person. For example, petitioners in this suit complain of some practices, such as advertising and interviewing persons in the Harris County jail, on the grounds that these practices violate the Canons of Ethics. This suit is directed solely against the Foundation, which is a non-profit corporation. The Canons of Ethics do not apply to corporations or non-attorneys. The Texas Canons of Ethics apply solely to attorneys at law. Section 4, of Article 320a–1, Vernon's Annotated Civil Statutes, by which the Legislature empowered the Supreme Court to promulgate the Canons of Ethics, states that "the Supreme Court of Texas shall prepare and propose rules and regulations * * * prescribing a code of ethics *governing the professional conduct of attorneys at law*." Therefore, the pleadings in this case alleging a violation of the Canons of Ethics should be voluntarily deleted, but if such pleadings are not voluntarily eliminated, then a special exception to such pleadings should be sustained.

The Stewart case, supra, is the only Texas case we have been able to find which holds that attorneys have standing to enjoin the unauthorized practice of law. However, many courts in other jurisdictions have considered this question. The majority of those jurisdictions hold that an attorney has standing to enjoin unauthorized practice of law. See the comprehensive annotation, Annot., 90 A.L.R.2d 7 (1963), and the many cases discussed therein.

Stewart, as well as most of the cases in other jurisdictions, cites the early case of Dworken v. Apartment House Owners Ass'n, 38 Ohio App. 265, 176 N.E. 577 (1930). In that case the Ohio court held that members of the legal profession had an interest in the nature of a property right in the practice of their profession, such as would support the authority of an individual licensed attorney, for the benefit of himself and all other attorneys similarly situated, to enjoin a corporation from practicing law. A case of similar import is Depew v. Wichita Retail Credit Ass'n, 141 Kan. 481, 42 P.2d 214 (1935). In that case the court stated that whether or not the plaintiffs' interest in their professional capacity was in the nature of a property right, they did have a special privilege, franchise, and duty as officers of the court to protect the legal profession, the courts, and the administration of justice generally against the illegal and unprofessional conduct of others.

We find that there are cases which hold to the contrary. However, we are clear in the view that the interest of the legal profession, as well as the interest of the public, would be better served by recognizing the right of private attorneys to institute an action, upon proper and sufficient allegations, to enjoin the unauthorized practice of law or conduct of non-lawyers which is demeaning to the legal profession and harmful to the plaintiffs.

The trial of the cause is to be governed by the following specific instructions: The petitioners will have the burden of pleading and proving that the Foundation is engaged in the unlawful practice of law by directly representing clients as an attorney, by signing pleadings in its name, or by appearing for such clients through its employees, in presenting pleadings, motions, orders and other documents filed in the several courts of this State. Without pleadings and proof establishing that the activities of the Foundation constitute the practice of law, cases such as San Antonio Bar Association v. Guardian Abstract & Title Co., 156

Tex. 7, 291 S.W.2d 697 (1956) and Hexter Title & Abstract Co. v. Grievance Committee, 142 Tex. 506, 179 S.W.2d 946, 157 A. L.R. 268 (1944), will have no application. In each of those cases, the title companies were corporations for profit. Charges were made and fees were received for legal services rendered to clients of the companies by employee attorneys of the companies. In *Hexter,* this Court pointed out that the facts showed that the employee attorney's first loyalty was to the corporation for which he worked rather than to his client; on occasions, superior officials in the corporation, some being lay officials, instructed the employee attorney as to what kind of instrument to prepare and as to the phrasing of the instrument.

■ If, on the trial of the case, it is established by competent evidence that the Foundation is truly a legal aid society which acts merely as a conduit or intermediary to bring the attorney and client together and does not purport to control or exploit the manner in which the attorney represents his indigent client, the operations and activities of the Foundation should not be held to be in violation of Article 320a–1, Vernon's Annotated Civil Statutes, which provides that "all persons not members of the State Bar are hereby prohibited from practicing law in this State." Azzarello v. Legal Aid Society of Cleveland, 117 Ohio App. 471, 185 N.E.2d 566 (1962). See Canon 32, Texas Canons of Ethics. In Azzarello, where a legal aid society organized as a corporation was challenged on the grounds that it engaged in the unauthorized practice of law in providing legal aid to the indigent in criminal cases and legal services to the poor in civil cases, the court said:

"We come, therefore, to the question of whether or not the Legal Aid Society and its Legal Aid Defender Department in referring indigents to lawyers working on a retainer or under a salary arrangement with the Society is engaging in the unlawful practice of law. At the very outset it must be observed that no benefit can be or is expected by or can possibly result from the legal service rendered to indigent persons to the Society, nor is any such benefit intended. The procuring of counsel in a proper case is the performance of a needed public service. The Society does not act as an intermediary in procuring the services of a lawyer for a person in need of such service who is unable to pay therefor or to respond to the full extent in payment of the value of the services rendered. The lawyer who renders the service for the indigent person is his lawyer, the relationship is that of attorney and client to whom the lawyer owes the same fidelity as if the client was able to pay the proper fee and the client had engaged the services of the lawyer himself.

"The Legal Aid Society, in carrying out its purposes, is only an agency of reference where the lawyers to whom indigent persons in need of legal services may look for compensation under a pre-arranged agreement. The funds under control of the Society are in no sense to be considered as its assets. The Society is only the channeling agency through which the funds of donors or public departments are given in response to a recognized public need. The Society, in carrying out its part in this necessary endeavor is not attempting to practice law or in its own interest acting as an intermediary for such purpose.

\*       \*       \*       \*       \*       \*

"The many Legal Aid Societies throughout the United States, formed by lawyers or by the action of bar associations or public spirited citizens or charitable organizations, have been rendering such public services for almost one hundred years without serious challenge. So long as their activities stay within the purpose as set out in the Cleveland Society's Charter, quoted above, there is not legal basis upon which their activities can be challenged. The evidence in these

cases are such as to support the judgment of the trial court finding the Legal Aid Society in both its activities in the civil and criminal proceedings not to be acting in the unlawful practice of the law." 185 N.E.2d at 570.

■ The petitioners will also have the burden of pleading and proving that the practices of the Foundation are demeaning to the profession and harmful to the plaintiffs. The United States Supreme Court has recently written several cases with respect to this issue—United Mineworkers of America v. Illinois State Bar Ass'n, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). In these cases, programs were challenged on the grounds that they violated the Canons of Ethics and constituted unauthorized practice of law. While holding against the imposition of state regulation in each case, the Supreme Court recognized, in each of the opinions, that objectionable conduct can be enjoined so long as the conduct complained of is truly harmful to the profession and the public. In seeking to enjoin interviewing in the Harris County jail, operation of the Lawyer Referral Service, and advertising by the Foundation, it is incumbent on petitioners to demonstrate that the conduct of which they complain is truly harmful and demeaning.

The judgments of the courts below are reversed and the cause is ordered reinstated on the docket of the 165th Judicial District Court of Harris County, Texas, for trial on the merits not inconsistent with this opinion. All costs are adjudged against the Foundation.

## ON MOTION FOR REHEARING

■ The Foundation, in its motion for rehearing, alleges that the holding of this Court, as expressed in its opinion delivered on June 26, 1968, abridges the freedom of the poor and indigent to have legal services under the Economic Opportunity Act, and that the holding denies to the Foundation equal protection of the law and due process of the law as guaranteed by the First and Fourteenth Amendments of the Constitution of the United States. The motion further charges that our holding constitutes governmental or state action in the domain of the indispensable liberties of speech, press or association, and results in abridgement of such rights.

There is no basis in the record which would justify such contentions. We simply held that the petitioners had standing to bring the suit, and having pleaded that the Foundation, as a corporation, was engaged in the unauthorized practice of law in violation of Article 320a–1, Vernon's Annotated Civil Statutes, which prohibits non-lawyers [corporations] from practicing law, and having pleaded certain practices of the Foundation as being demeaning to the legal profession and harmful to the plaintiffs, the trial court improperly sustained the Foundation's plea in abatement. The opinion specifically placed upon the petitioners the burden of pleading and proving such allegations. We adhere to our original holding that the trial court erred in sustaining the Foundation's plea in abatement. Our opinion and the judgment thereafter rendered reinstating the cause on the docket of the District Court of Harris County, Texas, in no manner passed upon the issues urged in the motion for rehearing. The motion for rehearing is overruled. No further motions will be entertained.

REAVLEY, J., not sitting.