# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-05-00413-CV

**Raul Garcia, Appellant**

**v.**

**Commission for Lawyer Discipline, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## NO. GN302550, HONORABLE MARK D. DAVIDSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment issued June 29, 2007, and substitute the following in its place. The Court has overruled appellant's motion for rehearing.

This disciplinary action was brought by the Commission for Lawyer Discipline against Raul Garcia, a Texas-licensed attorney, for violations of rules 5.04(a), 5.04(b), 5.05(b), and 7.01(a) of the Texas Disciplinary Rules of Professional Conduct. On cross-motions for summary judgment, the district court granted summary judgment for the Commission as to rules 5.04(a), 5.05(b), and 7.01(a), and for Garcia as to rule 5.04(b). Garcia appeals the district court's judgment partially granting the Commission summary judgment against him and partially denying his summary judgment motions. We affirm the district court's judgment.

**BACKGROUND**

At relevant times, Garcia was employed by Cristo Vive, Christian Social Services, Inc. Cristo Vive is a nonprofit organization that, beginning in the late 1980s, provided services that have included assisting individuals with immigration-related legal matters, translation work, and social-service referrals. It is undisputed that some of these activities come within the statutory definition of the practice of law. *See* Tex. Gov't Code Ann. § 81.101(a) (West 2005). It is also undisputed that Cristo Vive has charged fees for these legal services ranging from $250 to $450, depending on the nature of service provided, served between 3,400 and 5,400 clients annually during the 1999-2001 tax years, and collected fees ranging from approximately $230,000 to $619,000 annually during that period.

Cristo Vive was previously the target of a proceeding initiated by the Unauthorized Practice of Law Committee (UPLC). *See id.* §§ 81.103-.104 (West 2005). Cristo Vive ultimately entered into a consent decree with the UPLC under which Cristo Vive "and its agents, officers, directors, servants, employees, successors and assigns" were enjoined from engaging in a range of activities related to immigration legal services,[1] subject to the following limitation on that prohibition:

---

[1] These activities included:

1.      Contracting with individuals to represent them in preparing, filing, or assisting with the preparation or filing of any documents with the United States Immigration and Naturalization Service;

2.      Advising individuals as to their legal rights, the advisability and time limits in the making of claims for temporary and permanent residence, as well as U.S. citizenship;

3.      Advising individuals of their rights, duties, and privileges under the law;

4.      Advising individuals that they do not require the advice or services of a duly licensed attorney;

2

except to the extent it is legally permitted to do so by 8 C.F.R. § [292.2]² and except to the extent it performs any such acts and conduct under the direction, supervision and control of a member of the State Bar of Texas.

Federal regulation permits non-profit organizations meeting certain criteria to obtain recognition or accreditation from the Board of Immigration Appeals permitting them to designate a representative to practice before the Board or INS. 8 C.F.R. § 292.2. Criteria for recognition include "ha[ving] at its

---

5. Soliciting legal services on behalf of another for remuneration;

6. Holding itself out as an attorney authorized to practice law in the State of Texas;

7. Holding itself out as qualified to render professional legal services of any kind;

8. Advising individuals regarding (a) which specific documents or forms might be necessary for filing with a court or governmental agency to accomplish an individual's objective; (b) how to properly fill out such papers; (c) where to correctly fill out such papers; or (d) how to present additional information to a court, government agency or quasi-judicial body;

9. Employing the words "immigration services" or "immigration consultant" in relation to any business it conducts;

10. Advertising or representing in written or electronic media or in any documents ordinarily submitted to the United States Immigration and Naturalization Service that it renders or can render "immigration services," is an "immigration consultant," or any services relating to United States citizenship application, non-immigrant or immigrant status; or

11. Assisting any other individual in the unauthorized practice of law.

Expressly excluded from the prohibited activities were translating documents; taking identification pictures; taking and filing Immigration and Naturalization Service (INS) fingerprint forms; teaching and testing English as a second language, history, government, or other classes; notary services; and "providing communitary services to low income persons," such as referrals to social service agencies and charitable organizations regarding food, shelter, and benefits.

² The parties agree that the Cristo Vive consent decree mistakenly refers to 8 C.F.R. § 229.1 instead of 8 C.F.R. § 292.2 and that this is purely a typographical error.

disposal adequate knowledge, information and experience" and "mak[ing] only nominal charges . . . for persons given assistance." *Id.* § 292.2(a). The Commission has acknowledged that "[i]f Cristo Vive and its non-lawyer employees were recognized/accredited," state unauthorized practice of law (UPL) limitations "would yield to this federal law." However, it is undisputed that Cristo Vive has never succeeded in obtaining the required status.

In the aftermath of the consent decree, Cristo Vive, through its board of directors, and Garcia executed an employment contract whereby Garcia agreed to serve as the entity's "IN-HOUSE STAFF ATTORNEY . . . to supervise, direct and control all legal services offered to the community by Cristo Vive." It is undisputed that Cristo Vive and Garcia crafted the contract language and the structure of their relationship with the intent of coming within the second exception of the consent decree; i.e., Cristo Vive's acts and conduct otherwise constituting UPL would be "perform[ed] . . . under the direction, supervision and control of a member of the State Bar of Texas"—Garcia. Garcia accepted the position on June 26, 2001.

Thereafter, Garcia provided legal services to Cristo Vive's clients. Garcia worked full-time in this capacity for Cristo Vive and did not otherwise practice law other than occasional pro bono work through Volunteer Legal Services.[3] It is undisputed that although Cristo Vive charges fees varying with

---

[3] In his interrogatory responses, which are a part of the summary-judgment record, Garcia explained the "process by which immigration clients are assisted by Cristo Vive" and his role in that process:

> Client comes to Cristo Vive and asks for assistance. If the assistance requires legal advice they are told that only an attorney can answer that question and that they cannot give legal advice. They are informed that there is an attorney in the office [who] can advise them. If they want to see the attorney the attorney performs an interview, offers a legal remedy if there is one available, and prescribes the appropriate applications. If they want to hire Cristo Vive to fill out the prescribed applications the attorney will direct, supervise and control the service.

the services provided to each client, Garcia received a salary of approximately $50,000 per year that was not tied to the type of services he provided or the number of clients he counseled.

In June 2003, the Commission filed a disciplinary proceeding against Garcia alleging violations of the following provisions of the Texas Disciplinary Rules of Professional Conduct:

- 5.04(a) (fee-splitting with a non-lawyer);
- 5.04(b) (forming a partnership with a non-lawyer);
- 5.05(b) (assisting a person who is not a member of the state bar in committing UPL);
- 7.01(a) (practicing in private practice under a trade name).

The Commission subsequently sought partial summary judgment that Garcia had violated each of these rules. Garcia filed a response to the motion and separate cross-motions for traditional and "no evidence" summary judgment regarding each of the alleged rule violations. The district court granted the motions of both the Commission and Garcia in part and denied them in part. It rendered judgment that Garcia had violated rules 5.04(a), 5.05(b), and 7.01(a) but had not formed a partnership with a non-lawyer in violation of rule 5.05(b). The court further adjudged that the proper discipline for Garcia's violations was a public reprimand with an award of costs. This appeal ensued.

---

Garcia further described his duties as an attorney with Cristo Vive as follows:

> My duties are to supervise, direct and control all services provided by the paralegals in connection with their petitions for status as lawful permanent residents or as citizens of the United States that I may have advised. In initial consultation, I determine what forms, if any, will achieve the result desired by the client, and advise them accordingly. If the client hired Cristo Vive to type out forms and prepare, I direct, supervise, and control the staff in typing out the form, and after they are typed out, I review to make sure everything was answered correctly. I then authorize the client to mail the application [to] the [Bureau of Citizenship and Immigration Services] or [Department of State].

5

**ANALYSIS**

Garcia appeals the district court's judgment that he violated rules 5.04(a), 5.05(b) and 7.01(a). The Commission does not appeal the district court's judgment for Garcia regarding rule 5.05(b).

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 n.4 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16).

When, as here, both parties move for summary judgment on overlapping grounds and the district court grants one motion and denies the other, we ordinarily review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).[4]

---

[4] Although we construe Garcia's brief to challenge the district court's denial of both his traditional and no-evidence summary-judgment motions, his brief argues only the grounds he asserted in his traditional motion, which are also substantially similar to those in his response to the Commission's motion.

6

**Rule 5.05(b): Assisting UPL**

Rule 5.05(b) provides that a lawyer shall not "assist a person who is not a member of the bar in the unauthorized practice of law." Tex. Disciplinary R. Prof'l Conduct 5.05(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9). This prohibition against assisting UPL, as well as the underlying ban on UPL itself, is rooted in a "perceived need to protect individuals and the public from the mistakes of the untrained and the schemes of the unscrupulous, who are not subject to the judicially imposed disciplinary standards of competence, responsibility, and accountability." Tex. Disciplinary R. Prof'l Conduct 5.05 cmt. 1.[5]

The Commission's complaint that Garcia assisted in UPL is predicated on the UPL of Cristo Vive. Cristo Vive's alleged UPL, in turn, is predicated on the acts of Garcia in providing legal services in the name of Cristo Vive to its customers, which is imputed to Cristo Vive as Garcia's principal. It is undisputed that the services Garcia provided to third parties as an attorney for Cristo Vive included those constituting the practice of law. *See* Tex. Gov't Code Ann. § 81.101(a)[6]; *see also Unauthorized*

---

[5] Garcia suggests that the UPL prohibition, as a barrier to market entry, may also serve to advance the purely economic interests of attorneys against competition from other service providers, to the detriment of consumers. It is undisputed that both the UPLC proceeding against Cristo Vive and the Commission's proceeding against Garcia were instigated by a local immigration attorney whose client base overlaps with the population served by Cristo Vive. We must decline Garcia's invitation to revisit the policy decisions of the legislature and supreme court that are reflected in the statutes and rules that we are bound to apply.

[6] Section 81.101(a) of the government code defines the "practice of law" as:

the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

*Practice of Law Comm. v. Cortez*, 692 S.W.2d 47, 50 (Tex. 1985) (holding that advising client as to whether to file immigration form constitutes practice of law). To date, Texas law remains that, at least where a corporation has no direct interest in legal work performed by a lawyer agent for the benefit of a third party, the corporation has practiced law through that lawyer. *See San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 701-02 (Tex. 1956); *Hexter Title & Abstract Co. v. Grievance Comm., Fifth Congressional Dist.*, 179 S.W.2d 946, 953-54 (Tex. 1944).[7]

To avoid the Commission's entitlement to summary judgment on this issue, Garcia relies principally on the affirmative defense that his actions for Cristo Vive were expressly permitted by that entity's consent decree with the UPLC.[8] As noted previously, the consent decree enjoined Cristo Vive

---

Tex. Gov't Code Ann. § 81.101(a) (West 2005). However, this definition "is not exclusive and does not deprive the judicial branch of the power and authority under both [chapter 81 of the government code] and the adjudicated cases to determine whether other services and acts not enumerated may constitute the practice of law." *Id.* § 81.101(b).

[7] *Cf. American Home Assurance Co., Inc. v. Unauthorized Practice of Law Comm.*, 121 S.W.3d 831, 839-42 (Tex. App.—Eastland 2003, pet. granted) (citing *Utilities Inc. v. Montgomery*, 138 S.W.2d 1062, 1064 (Tex. 1940) (suggesting that corporate practice of law imputed from acts of lawyer agent would not constitute *unauthorized* practice of law if corporation retained direct interest in matter); *Unauthorized Practice of Law Comm. v. Nationwide Mut. Ins. Co.*, 155 S.W.3d 590, 598-599 (Tex. App.—San Antonio 2004, pet. filed) (same). The Texas Supreme Court has granted review in *American Home*, and it remains pending before the court.

[8] Garcia also suggests that "the Comments to the Rules of Professional Conduct expressly permit Garcia to undertake his employment with Cristo Vive." From context, it appears that Garcia is referring to comments 4, 5, and 6 to rule 5.04, which he suggests "contemplate situations in which a lawyer may be hired by an organization to provide legal services to another person," including employment with legal-aid offices. *See* Tex. Disciplinary R. Prof'l Conduct 5.04 cmts. 4-6. As discussed below, rule 5.04 is concerned with maintaining the professional independence of lawyers. The three comments Garcia cites address the professional-independence concern where lawyers are hired to provide legal services to third persons. Contrary to what Garcia suggests, the comments do not imply that such arrangements are categorically permitted without regard to the limitations of other rules. *See also* Tex. Ins. Code Ann. § 961.303 (west 2006) (non-profit legal-service corporations "must act only as an agent on behalf of its participants" and attorney contracting to

8

"and its agents, officers, directors, servants, employees, successors and assigns" from a range of activities related to immigration-related legal services, subject to the following provision:

> except to the extent it is legally permitted to do so by 8 C.F.R. § [292.2] and except to the extent it performs any such acts and conduct under the direction, supervision and control of a member of the State Bar of Texas.

Although Garcia admits that Cristo Vive has not been accredited under section 292.2, he contends that the entity complied with the consent decree by "perform[ing] any such acts [otherwise prohibited by the decree] under the direction, supervision and control of a member of the State Bar of Texas"—Garcia. In Garcia's view, compliance with the second exception alone is sufficient to bring Cristo Vive in compliance with the consent decree because the decree's two exceptions are stated in the alternative, not cumulatively. The Commission disputes Garcia's construction of the consent decree, maintaining that Cristo Vive was required to satisfy *both* exceptions to the consent decree's prohibitions and that its inability to obtain recognition under section 292.2 thus forecloses its reliance on either exception.

We need not reach the proper construction of the consent decree because we conclude that Garcia has not raised a fact issue as to each element of any cognizable defense to which it would be relevant. While he pleaded each defense, Garcia is unclear in his summary-judgment papers and briefing about whether he is relying on former adjudication (res judicata or collateral estoppel) or equitable

provide services for corporation "must be an independent contractor . . . and may not be an employee of the corporation."); *Touchy v. Houston Legal Found.*, 432 S.W.2d 690, 694-95 (Tex. 1968) (contrasting a non-profit corporation that is "directly representing clients as an attorney by signing pleadings in its name, or by appearing for such clients through its employees," which would constitute UPL, with "a legal aid society which acts merely as a conduit or intermediary to bring the attorney and client together," which would not).

estoppel. The consent decree cannot support collateral estoppel because the issue of whether Cristo Vive's actions would have constituted UPL if supervised by an attorney was not fully and fairly litigated. *See Attorney Gen. of Tex. v. Lavan*, 833 S.W.2d 952, 955 (Tex. 1992); *Eagle Prop., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990). Similarly, we conclude that Garcia did not raise a fact issue regarding the final adjudication-on-the-merits element of res judicata. *See Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Nor can Garcia raise a fact issue regarding equitable estoppel. *See City of White Settlement v. Super Wash Inc.*, 198 S.W.3d 770, 773 (Tex. 2006) (noting that "equitable estoppel will not lie against the Government as against private litigants" because "legislative prerogative would be undermined if a government agent could—through mistake, neglect, or an intentional act—effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation").[9] We, accordingly, conclude that the district court did not err in granting summary judgment that Garcia assisted Cristo Vive in the UPL, in violation of rule 5.04(b).

**Rule 5.04(a): Fee splitting**

Rule 5.04(a) provides, with exceptions not applicable here, that "a lawyer or law firm shall not share or promise to share legal fees with a non-lawyer." Tex. Disciplinary R. Prof'l Conduct 5.04(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9). The rationale for this limitation is "to prevent solicitation by lay persons of clients for lawyers and

---

[9] We express no opinion regarding the Commission's contention that prior judgments in proceedings brought by the UPLC categorically cannot have claim- or issue-preclusive effect on the Commission's subsequent actions because the UPLC and the Commission—though both instrumentalities of the supreme court's regulatory apparatus over the practice of law in Texas—are "separate" entities.

to avoid encouraging or assisting nonlawyers in the practice of law." Tex. Disciplinary R. Prof'l Conduct 5.04 cmt. 1.

It is undisputed that persons served by Cristo Vive pay the entity for legal services provided by or under the supervision of Garcia, that these revenues are commingled with other revenues, and that this common pool of revenues goes to pay Cristo Vive's expenses—including Garcia's approximately $50,000 annual salary and the $85,000 salary of Cristo Vive founder, Jorge Sanchez. Garcia's salary was not dependent on the amount of legal fees collected by Cristo Vive. We agree with the Commission that these undisputed facts establish a violation of rule 5.04(a).[10] *See* Tex. Comm. on Prof'l Ethics, Op. 498, 58 Tex. B.J. 38 (1995) (holding that, when a lawyer is employed by a corporation not owned solely by licensed attorneys, "the arrangement would amount to an agreement by the lawyer to share legal fees with a non-lawyer (the corporation) in violation of Rule 5.04(a)" if the corporation were to receive payment for the lawyer's services).

Garcia argues that because Cristo Vive has operated at a loss, there were no "fees" capable of being "shared" in violation of rule 5.04(a). This argument confuses fees with profits. The act that Cristo Vive has not netted a profit from the legal services it provides does not negate the fact that it was

---

[10] The Commission aptly summarized the arrangement in its legal memorandum in support of its motion for partial summary judgment:

> Cristo Vive and Respondent have formed a relationship that is analogous to a non-lawyer (Joe) opening "Joe's Divorce Clinic, Inc." and hiring a staff attorney to review and sign all pleadings, while the non-lawyer provides the office space and equipment, advertises for Joe's Clinic, runs the office, and collects a salary substantially larger than that of the attorney. Plus, the divorce clients pay their fees to Joe, who then pays all expenses, including the attorney's salary.

11

paid for legal services that Garcia provided. Rule 5.04(a) plainly prohibits a lawyer from sharing his or her legal fees with a non-lawyer, without regard to whether the lawyer and non-lawyer earn a profit.

Garcia also emphasizes that comments 4 and 5 to rule 5.04 contemplate situations in which it is permissible for a lawyer to be employed by a non-lawyer organization to provide legal services to the organization's clients, and that comment 6 expressly permits a lawyer to accept employment with various types of legal-aid offices. *See* Tex. Disciplinary R. Prof'l Conduct 5.04 cmts. 4-6. These comments, however, merely emphasize that a lawyer in these situations must not allow the non-lawyer organization to direct or influence his or her professional judgment in serving the client. *Id.* Nothing in these comments implies that such arrangements are categorically permitted without regard to the limitations of other rules.[11]

Accordingly, we conclude that the district court did not err in granting summary judgment that Garcia violated rule 5.04(a) by sharing legal fees with a non-lawyer.

**Rule 7.01(a): Practicing under a trade name**

Rule 7.01(a) provides, in part, that "[a] lawyer in private practice shall not practice under a trade name." Tex. Disciplinary R. Prof'l Conduct 7.01(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9). Rule 7.01 is broadly aimed at preventing lawyers from using the names of other lawyers or entities so as to mislead the public regarding their identity. Tex. Disciplinary R. Prof'l Conduct 7.01 cmt. 1. In this regard, "Trade names are generally considered inherently misleading." *Id.*

---

[11] Similarly, we reject Garcia's contention that his decisions fell within a zone of professional discretion contemplated by these comments for which he should not be subject to discipline. Tex. Disciplinary R. Prof'l Conduct preamble ¶ 10.

The Commission presented undisputed summary-judgment evidence indicating that Garcia provided legal services to third parties under the name of Cristo Vive. This evidence included letters from Garcia to INS regarding, in his words, "clients" he "represent[ed]" in INS proceedings, on "Cristo Vive for Immigrants, C.S.S., Inc." letterhead indicating Cristo Vive's address, and signed "Raul Garcia, Attorney at Law." Similarly, Garcia's business cards were titled "Cristo Vive for Immigrant: Christian Social Services, Inc."; indicated the entity's address, phone number, and an email address "cristovive@ix.netcom.com"; and identified him as "Raul Garcia, ESQ., Attorney at Law/Abogado." The evidence also indicated that Cristo Vive's signage at its offices, while indicating the presence of an "Attorney at Law," referred only to Cristo Vive and not Garcia.

Garcia asserts that rule 7.01(a) does not apply to him because he is not "in private practice," but is "an employee of a legal aid provider" or an in-house "corporate employee" of a non-profit. In support of this argument, Garcia points to the supreme court's attorney-occupancy-tax exemption form, which identifies an exempt category of "employee of a 501(c)(3) or 501(c)(6) non-profit corporation whose employees are prohibited from private practice," and the state bar's membership form, which distinguishes between a lawyer in "Private Law Practice" and "In-House/Corporate Counsel."

To construe rule 7.01(a), however, we seek the supreme court's intent as reflected in the text of the Disciplinary Rules of Professional Responsibility. The Commission points out that the term "private practice" as used in the rules distinguishes between governmental employment, in which a lawyer represents the public interest, and all other types of employment, in which the lawyer represents the interests of a private party. *See* Tex. Disciplinary R. Prof'l Conduct 1.10, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9). We agree with the Commission that, from context, "private practice" in rule 7.01(a) was intended to refer to lawyers representing private

13

third-party clients.  In light of our disposition of Garcia's other issues, we agree that the district court did not err in granting summary judgment that he violated rule 7.01(a) by using the trade name of Cristo Vive in his representation of private clients.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed on Motion for Rehearing

Filed:  July 26, 2007